IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMALIA GONZALEZ-AMEZCUA, | No. C 05-00773 JSW |
| Plaintiff, | **ORDER DENYING IN PART AND REMANDING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND REMANDING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| JO ANNE B. BARNHART, Commissioner, Social Security Administration, | |
| Defendant. | |

Now before the Court is Plaintiff Amalia Gonzalez-Amezcua's ("Gonzalez") Motion for Summary Judgment and the Cross-Motion for Summary Judgment filed by the Commissioner of the Social Security Administration ("Commissioner"). Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the administrative record and considered the parties' papers and the relevant legal authority, and good cause appearing, the Court hereby DENIES IN PART and REMANDS IN PART Gonzalez's Motion for Summary Judgment and GRANTS IN PART and REMANDS IN PART the Commissioner's Cross-Motion for Summary Judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Gonzalez brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(g) to obtain judicial review of a final decision of the Commissioner denying her request for Social Security benefits.

Gonzalez is a 40 year old woman, formerly employed as a customer service representative, a data entry clerk, and a telephone order clerk. (AR at 15.) She claims she became disabled on August 1, 2000, due to bilateral carpal syndrome and other upper bilateral extremity problems. (*Id*.)

On April 17, 2001, one treating physician, Dr. Damore, diagnosed Gonzalez with bilateral carpal tunnel syndrome and bilateral thoratic outlet syndrome. (*Id.* at 215.) On September 4, 2001, Dr. Damore set limitations of lifting no more than 15 pounds and typing no more that 20 minutes per hour or five minutes consecutively. (*Id.* at 211.)

On September 19, 2001, qualified medical examiner Dr. Pang diagnosed overuse syndrome with limitations on typing. (*Id.* at 190.) On September 17, 2002, Dr. Damore reiterated his limitations set in September 2001, and opined that Gonzalez could achieve substantial gainful employment. (*Id.* at 200-01.) On October 18, 2002, the non-examining medical expert Dr. Newton opined that Gonzalez could perform sedentary work with limitations on lifting and constant typing. (*Id*. at 219-226.)

On June 11, 2003, an MRI revealed mild disc protrusion in Gonzalez's lower back. (*Id*. at 230.) On November 13, 2003, another treating physician, Dr. Banuelos, opined that Gonzalez's limitations included lifting no more than five pounds and typing no more than 30 minutes. (*Id*. at 285-291.) He also stated that Gonzalez could sit/stand/walk for only one hour at a time, and that she needed to lie down for three hours during an eight-hour day. (*Id*.)

On August 27, 2002, Gonzalez filed an application for disability benefits. (*Id*. at 60-62.) The Social Security Administration denied her application initially and upon reconsideration. (*Id*. at 44, 49.) Gonzalez appeared before an Administrative Law Judge ("ALJ") at a hearing conducted on August 5, 2004. (*Id*. at 311-348.)

A vocational expert ("VE") testified at the hearing. (*Id*. at 333-348.) The VE testified that Gonzalez could not perform her past work but had developed transferable skills of customer service work and record-keeping. (*Id*. at 336.) Based on Gonzalez's limitations and skills set, the VE testified that two jobs were appropriate for Gonzalez: security guard and receptionist/information clerk. (*Id*. at 337-38.) Due to Gonzalez's limitations, however, the VE reduced the available number of available jobs in each of these fields by two-thirds. (*Id.*) Even with the two-thirds

2

reduction, the VE testified that 60,000 security jobs and 40,000 receptionist/information clerk jobs were available in California.  (*Id.*)

The ALJ found that although Gonzalez could not perform her past work, she could adapt to other jobs that exist in significant numbers in the national economy and therefore was not considered disabled.  (*Id*. at 19-20.)  In making this finding, the ALJ relied in part on the VE's testimony about the types of jobs Gonzalez could perform, found Gonzalez's testimony not to be credible, and rejected the opinion of Dr. Banuelos.  (*Id*.)  The Social Security Administration denied Gonzalez's request to review the ALJ's decision.  (*Id*. at 6.)

On June 22, 2005, Gonzalez commenced this action for judicial review of the ALJ's decision.  Gonzalez argues that the ALJ erred by (1) failing to offer specific reasons for rejecting the testimony of one of her treating physicians; (2) improperly determining her residual functioning capacity because he did not consider her ability to perform sustained work; (3) failing to offer specific reasons for finding her testimony incredible; and (4) improperly relying on the VE's testimony to determine that she could perform other work.

## ANALYSIS

**A.     Standard of Review of Commissioner's Decision to Deny Social Security Benefits.**

A federal district court may not disturb the final decision of the Commissioner unless it is based on legal error or the fact findings are not supported by substantial evidence.  42 U.S.C. § 405(g); *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987).  Considering the administrative record as a whole, "[s]ubstantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  To determine whether substantial evidence exists, courts must look to the record as a whole, considering both evidence that supports and undermines the ALJ's findings.  *Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).  An ALJ's decision must be upheld, however, if the evidence is susceptible to more than one reasonable interpretation.  *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

**B.  Legal Standard for Establishing a Prima Facie Case for Disability.**

The plaintiff has the burden of establishing a prima facie case for disability. *Id*. at 1452. The disability assessment by the Commissioner follows a five-step sequential evaluation to determine whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the claimant must not be working. 20 C.F.R. § 416.920(b). Second, the claimant's impairment must be "severe." 20 C.F.R. § 416.920(c). Third, when the claimant has an impairment that meets the duration required and is listed in Appendix 1 (a list of impairments presumed severe enough to preclude work located in subpart P of part 404 of 20 C.F.R. § 416.920), or is equal to a listed impairment, benefits are awarded without considering the claimant's age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner assesses the claimant's residual functional capacity to determine if the claimant can perform past work. 20 C.F.R. § 416.920(e). Benefits are denied if the claimant can do past work. *Id*. Fifth, if the impairment prevents the claimant from doing past relevant work, the claimant's age, education, work experience, and residual functional capacity are considered to see if the claimant is capable of performing other work that exists in the national economy. 20 C.F.R. § 416.920(g). The claimant is not entitled to benefits if the claimant can adjust to other work. *Id*.

In this matter, the ALJ used the five-step analysis to determine that (1) Gonzalez was not working; (2) her mild carpal tunnel syndrome and mild back problem constituted "severe" impairments; but (3) her impairments did not meet or medically equal the listings in Appendix 1, Subpart P, Regulations No. 4; (4) she was unable to perform her past work; but (5) she has the residual functional capacity to perform a significant range of sedentary jobs that exist in significant numbers in the national economy, namely a security guard or receptionist/information clerk. (AR at 19-20.) Therefore, the ALJ concluded that Gonzalez was not disabled. (*Id.* at 20.)

**C.  Treating Physician's Opinion.**

Gonzalez asserts that the ALJ's rejection of the opinion of Dr. Banuelos', her treating physician, is not supported by specific reasons rooted in substantial evidence in the record.

In general, a treating physician's opinion is afforded greater weight than a non-treating

4

physician. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). However, the "ALJ may disregard the treating physician's opinion" if the ALJ "'make[s] findings setting forth specific and legitimate reasons for doing so that are based on substantial evidence in the record.'" *Id*. (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). The ALJ can meet this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).

Gonzalez stated that Dr. Damore was a treating physician, but also referred to Dr. Banuelos as her "regular doctor." (AR at 330, 325.) The ALJ found Dr. Damore to be the treating physician. (*Id*. at 17.) Both parties agree that both Drs. Damore and Banuelos served as Gonzalez's treating physician at one time. (Br. at 20; Opp. Br. at 5.) Regardless of Dr. Banuelos' status, the ALJ provided specific reasons supported by substantial evidence in the record and therefore properly rejected Dr. Banuelos' opinion.

The ALJ listed the detailed finding and limitations set forth by Drs. Damore and Banuelos, as well as conclusions of a Qualified Medical Examiner and non-examining medical expert. (AR at 16-17.) The ALJ rejected the opinion of Dr. Banuelos, explaining that the opinion "is not supported by the substantial medical evidence of record. Dr. Banuelos offers no explanation for the great limitations in residual functional capacity and his opinion is contradicted by the Qualified Medical Examiner and the claimant's long time treating physician Dr. Damore." (*Id*. at 17.) These constitute specific reasons for rejecting Dr. Banuelos' opinion.

Additionally, the reasons are supported by the record. Dr. Banuelos' evaluation form states that Gonzalez can lift five pounds, cannot use her hands/arms for more than 30 minutes per day, and must lie down for three hours during an eight hour day. (*Id*. at 285-291.) According to the VE, lying down for three hours every workday would render an employee unemployable. (*Id*. at 339.) The other medical evaluations contradict this assessment of Gonzalez's limitations. Dr. Damore, another treating physician, found that Gonzalez is limited to 20 minutes of typing per hour, five minutes of consecutive typing, and lifting 15 pounds, but "would be able to achieve gainful employment." (*Id*. at 200-01.) Dr. Pang, the Qualified Medical Examiner, listed only preclusion from heavy lifting and prolonged keyboarding. (*Id*. at 186-193.) Dr. Newton, a non-examining medical expert, found that

5

Gonzalez's could lift 10-15 pounds, stand/walk for six hours, sit for six hours, but could not perform constant fingering or handling. (*Id*. at 219-226.) None of these sources indicate limitations as severe as those assessed by Dr. Banuelos. Additionally, Dr. Banuelos' conclusions were not substantiated by evidence of such severe limitations. (*Id*. at 285-291.) An ALJ "need not accept a treating physician's opinion which is 'brief and conclusory.'" *Magallanes,* 881 F.2d at 751 (quoting *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986)).

Therefore, the Court finds that the ALJ has set forth specific and substantially supported reasons for rejecting Dr. Banuelos' opinion and, in this part, denies Gonzalez's Motion for Summary Judgment and grants the Commissioner's Cross-Motion for Summary Judgment.

## D.  Gonzalez's Residual Functional Capacity.

Gonzalez asserts that the ALJ improperly determined her residual functional capacity ("RFC") because he did not consider her ability to perform sustained work. Regarding Gonzalez's RFC, the ALJ determined that Gonzalez could lift up to 10 pounds and use her bilateral upper extremities for 20 minutes per hour. (AR at 18.) Based on this RFC, the ALJ determined that Gonzalez could perform sedentary work. (*Id*. at 18-19.)

The ALJ's determination of Gonzalez's RFC is substantially supported by the record. The ALJ's description of Gonzalez's RFC reiterates the limitations set forth by the physician evaluations discussed above. Drs. Damore, Pang, and Newton all articulated limitations in keyboarding, but none mentioned limitations that would interrupt a sustained schedule. In addition, Dr. Damore indicated that despite Gonzalez's limitations, she "would be able to achieve gainful employment." (*Id*. at 201.) Therefore, the Court finds that the ALJ properly determined Gonzalez's RFC and, in this part, denies Gonzalez's Motion for Summary Judgment and grants the Commissioner's Cross-Motion for Summary Judgment.

## E.  Vocational Expert Testimony.

Gonzalez claims that the ALJ erroneously relied on the VE's confusing and inconsistent testimony in determining that Gonzalez could adapt to alternate work.

The ALJ determined that Gonzalez was able to perform sedentary work, and had no transferable skills. (AR at 20.) Sedentary is the least of the exertion levels, and unskilled is lowest

of the skill levels. Despite Gonzalez's limitations, the ALJ concluded that Gonzalez could adapt to alternate jobs, namely a receptionist/information clerk and a security guard. (*Id*.)

Neither the security guard position given by the VE nor any of the four types of receptionist/information clerk positions listed in the Dictionary of Occupational Titles ("DOT") comport with the requirements of both sedentary and unskilled levels. *See* DOT 372.667-034; DOT 237.367-018; DOT 237.367-022; DOT 237.367-038; DOT 352.677-014.

"[A]lthough the DOT raises a presumption as to the job classification, it is rebuttable." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). "An ALJ may rely on expert testimony that contradicts the DOT, but only insofar as the record contains persuasive evidence to support such a deviation." *Id*. Regarding the receptionist/information clerk position, the VE did not attempt to contradict the DOT. He offered the receptionist/information clerk as a semi-skilled position, one appropriate for Gonzalez's transferable skills of customer service work and record-keeping. (AR at 338). Offered as a semi-skilled job, appropriate semi-skilled receptionist/ information clerk positions exist. *See* DOT 237.367-038. However, no appropriate unskilled receptionist/information clerk positions exist without persuasive evidence indicating otherwise. *See* DOT 237.367-018; DOT 237.367-022; DOT 352.677-014.

Likewise, the VE also offered the security guard position as semi-skilled, as classified by the DOT. (AR at 341-42.) He recognized Gonzalez's transferable "skills as those that would fit into [the security guard] occupation" and that she "would be well qualified based on the[] very minimal semi-skills that are necessary to perform the job." (*Id*.) However, VE did admit that, in his experience, the security guard job can be an unskilled position. (AR at 341, 342.) The VE testified that, because someone could learn the tasks required by a security guard in less than 30 days, the position could be classified as unskilled. (*Id*. at 342.) To explain the deviation between the DOT and his personal experience, the VE explained that the difference between a skilled and unskilled position could be just one day of training. (*Id*. at 341.) Therefore, "there are security guard positions that would be at a higher level than the very basic security guard." (*Id*. at 343.) The higher level security jobs require more skills than the basic unskilled job, so the security job could also be classified as semi-skilled. (*Id*.)

7

In addition to contradicting the skill level of the security guard position, the VE also contradicted the exertion level. The DOT lists a security guard as a light position. DOT 372.667-034. However, the VE claimed that "there is a portion of [a security guard job] that is sedentary as opposed to light [as listed] by the DOT." (*Id*. at 343.) For this reason, the VE estimated the number of security guard positions available to Gonzalez was drastically reduced due to "an erosion of the occupational base by two-thirds . . . [s]ince the security guard is technically classified as a light job by the DOT." (*Id*. at 338.) The VE "wiped out two-thirds" of the available security jobs to exclude those light jobs for which the hypothetical person would not qualify, for reasons such as "frequent reaching and handling." (*Id*. at 344.) In other words, in the VE's experience, one-third of the available security guard jobs only require sedentary exertion.

Despite the contradictions between the VE's testimony and the DOT, "[t]he Social Security regulations do not require the Secretary or the expert to rely on classifications in the Dictionary of Occupational Titles." *Johnson*, 60 F.3d at 1435 (quoting *Conn v. Sec'y of Health and Human Servs.*, 51 F.3d 607, 610 (6th Cir.1995)). Because of a VE's familiarity with the claimant's limitations, he may "be used to show that the particular jobs, [regardless of classification by the DOT], may be the ones that a particular claimant can perform. In fact it seems an eminently appropriate use of the vocational expert's knowledge and experience." *Id.*

The VE in this case offered two semi-skilled occupations that the ALJ adopted as unskilled options appropriate for Gonzalez. The receptionist/information clerk position, while appropriate based on the VE's semi-skilled assessment of Gonzalez, may not appropriate under the ALJ's conclusion that Gonzalez was only qualified for an unskilled position. Additionally, the security guard position, while classified as a light/semi-skilled job, was described by the VE as a sedentary/semi-skilled job, but adopted in the ALJ's conclusions as a sedentary/unskilled job. It is unclear if a security guard position is indeed an appropriate position in light of Gonzalez's particular limitations.

The decision whether to remand for further proceedings or simply to award benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1175-77 (9th Cir. 2000). If additional proceedings can remedy defects in the original administrative proceedings, or will allow

8

the Commissioner properly to complete the administrative proceedings, the case should be remanded. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1980). Remand is necessary here in light of the confusion regarding the vocational findings by the VE and ALJ and to determine if there is an appropriate position to which Gonzalez can adapt. If no such position exists, benefits must be awarded. *See* 20 C.F.R. § 416.920(g). Therefore, this case is remanded to the Commissioner for additional proceedings to clarify this issue.

**F.     Claimant's Credibility.**

Gonzalez contends that the finding by the ALJ that her testimony was not credible was not supported by specific reasons. The ALJ found that:

> The claimant's testimony is not wholly credible. She has some credible pain symptoms based on the history of overuse syndrome of the upper extremities and some mild pain due to very mild lumbar spine problems. However, the degree of severity alleged by the claimant is not supported by the substantial medical evidence of record or her treating physician's opinion of her capacity to work.

(AR at 18.)

In determining claimant credibility, the ALJ's findings "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ can "rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between [her] testimony and [her] own conduct, or on internal contradictions in that testimony." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Examples of specific reasons include the ability to do household chores that conflicts with claimed limitations, a poor work history because it negatively affects one's credibility regarding the inability to work, and inconsistencies about drug use because it affects one's credibility for truth-telling. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ cited general inconsistencies between the pain alleged by Gonzalez and the medical record as a reason for discrediting Gonzalez's testimony. (AR at 18.) However, "[o]nce a claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Id.*; *see also Rice v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). The ALJ did precisely what is proscribed – Gonzalez produced evidence of underlying

9

impairments, but the ALJ discredited her testimony because the medical records did not corroborate the severity of the impairment. The "ALJ must identify what testimony is credible and what evidence undermines the claimant's complaints." *Reddick*, 157 F.3d at 722; *Rice,* 947 F.2d at 345. The ALJ did not perform this specific analysis, and "[g]eneral findings are insufficient." *Reddick*, 157 F.3d at 722. Therefore, the ALJ failed to set forth specific reasons for discounting Gonzalez's credibility. As a result, this case is remanded to the Commissioner for additional proceedings to reconsider Gonzalez's credibility. The ALJ can identify specific reasons for disbelieving Gonzalez testimony, accept her testimony, or re-evaluate the credibility of her subjective complaints. *See Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES IN PART and REMANDS IN PART Gonzalez's Motion for Summary Judgment and GRANTS IN PART and REMANDS IN PART the Commissioner's Cross-Motion for Summary Judgment. Further proceedings shall be limited to the reconsideration of Gonzalez's credibility and to determine if a position exists that Gonzalez can adapt to based on her RFC and transferable skills.

**IT IS SO ORDERED.**

Dated: March 22, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

10